# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

CURTIS WAYNE BLACKSHIRE, et al.,

                Plaintiffs,

v.                                  CIVIL ACTION NO.  2:08-mc-00116

LITTON LOAN SERVICING, L.P., et al.,

                Defendants.

### ORDER

Pending before the court is the Motion by  Defendants Litton Loan Servicing LP, Wells Fargo Bank, N.A., and U.S. Bank National Association, N.A. as trustee for C-Bass Mortgage Loan Asset Backed Certificates, Series 2007-RP1 ("U.S. Bank") to Withdraw Reference of this Adversary Proceeding [Docket 1].  For the reasons discussed below, the Motion is **DENIED**.

**I. Background**

The facts and allegations comprising this adversary proceeding are as follows.  In April 1998, the plaintiffs, Curtis Wayne Blackshire and Geraldine Blackshire, purchased a home in Roane County, West Virginia, with a loan financed by Banc One Financial Services.  In March 1999, their home mortgage loan was assigned or transferred to Norwest Bank Minnesota, N.A, which changed its name to Wells Fargo Bank Minnesota, N.A. around July 2000, and thereafter merged into or began to operate as Wells Fargo Bank (collectively "Wells Fargo").  Wells Fargo thereafter assigned Litton Loan Servicing LP ("Litton") to service the plaintiffs' loan.

The plaintiffs allege that Litton, as the loan servicer, engaged in several illegal debt collection practices, including holding their payments for deposit until after the payments' due dates in order to assess late charges against them. They further allege that Litton falsely accused the plaintiffs of being behind in their mortgage payments. Although the plaintiffs allege that they began to send payments by Western Union to ensure their timeliness, Litton continued to assess late fees against the plaintiffs and to claim that they also had missed loan payments. Litton also refused to accept three loan payments tendered by the plaintiffs.

On February 28, 2003, the plaintiffs filed for Chapter 13 bankruptcy protection in the Bankruptcy Court for the Southern District of West Virginia. Litton has filed a proof of claim in the bankruptcy proceeding, alleging that the estate should pay loan arrearage in the amount of $6,482.20, late charges of $150, NSF charges of $25, BPO fees of $66, and inspection fees of $72. The plaintiffs claim that Litton and Wells Fargo have never sent them a notice to cure or a reinstatement letter. They also allege that since they have filed for bankruptcy, Litton has continued to send its agents or other persons to drive by the plaintiffs' home under the guise of "inspection." Litton has ordered and charged the plaintiffs for thirteen such "inspections," which the plaintiffs argue are conducted for the sole purpose of harassing and humiliating them.

The plaintiffs filed an adversary proceeding in the Bankruptcy Court for the Southern District of West Virginia based on the collection activity described above. The plaintiffs asserted that, by failing to accept loan payments, Wells Fargo and Litton violated § 46A-2-115(c) of the West Virginia Protection Act. They also asserted that Wells Fargo and Litton engaged in illegal debt collection practices by making false, deceptive and misleading representations regarding the character, extent or amount of a claim against the plaintiffs in violation of West Virginia Code §

-2-

46A-2-127(d), by charging and attempting to collect from the plaintiffs fees not permitted by law

and otherwise in violation of West Virginia Code §§ 46A-2-115 and 46A-2-128(d), and that, by

conducting their so-called "inspections," they engaged in coercive, oppressive, and abusive tactics

to collect money from the plaintiffs in violation of West Virginia Code §§ 46A-2-115 and 46A-2-

125. Finally, the plaintiffs have alleged that Wells Fargo and Litton's predatory lending practices

forced them to seek bankruptcy protection.

The adversary proceeding continued in the Bankruptcy Court until October 3, 2008, when

Litton, Wells Fargo, and U.S. Bank (collectively "the defendants") filed the instant Motion to

Withdraw Reference of this Adversary Proceeding.

## II. Discussion

District courts have original jurisdiction over all cases arising under title 11 of the

Bankruptcy Code, 28 U.S.C. § 1334(b), and may automatically refer bankruptcy cases to non-Article

III bankruptcy judges. *Id.* § 157(a). However,

> [t]he district court may withdraw, in whole or in part, any case or proceeding
> referred [to the bankruptcy court], on its own motion or on timely motion of any
> party for cause shown. The district court shall, on timely motion of a party, so
> withdraw a proceeding if the court determines that resolution of the proceeding
> requires consideration of both Title 11 and other laws of the United States
> regulating organizations or activities affecting interstate commerce.

*Id.* § 157(d).

The defendants argue that the reference should be withdrawn "for cause" pursuant to §

157(d) because the adversary proceeding is a non-core proceeding. Specifically, the defendants

contend that the plaintiffs assert only state law claims and seek statutory penalties which have

nothing to do with bankruptcy provisions. They argue that considerations of judicial economy

weigh in favor of withdrawing the reference and that such withdrawal will not interfere with the uniform administration of the plaintiffs' bankruptcy proceedings.

The plaintiffs oppose withdrawal of the reference, and argue that this action is a core proceeding that arises in and is related to their bankruptcy proceeding. The plaintiffs contend that the adversary proceeding essentially raises counterclaims against the defendants and affects the adjustment of the debtor-creditor relationship. Moreover, the plaintiffs argue that withdrawal of the reference would hinder the bankruptcy proceedings which have been ongoing for five years and would be a waste of judicial resources.

In determining whether to exercise my discretion and to withdraw the case for cause, I must consider the following factors: (1) whether the proceeding is core or non-core; (2) the uniform administration of bankruptcy law; (3) the promotion of judicial economy; (4) the efficient use of the parties' resources; (5) the reduction of forum shopping; and (6) the preservation of the right to a jury trial. *In re U.S. Airways Group, Inc.*, 296 B.R. 673, 682 (E.D. Va. 2003). The most important factor is whether the case presents a core or non-core proceeding. *In re Coe-Truman Techs., Inc.*, 214 B.R. 183, 187 (N.D. Ill.1997).

For a matter to be considered a core proceeding, it must "arise under" title 11 or "arise in" a title 11 case. 28 U.S.C. § 157(b)(1-2). As an initial matter, I note that "[s]imply because the proceeding presents questions of state law does not necessarily mean that the proceeding is 'non-core' or otherwise beyond the jurisdiction of the bankruptcy courts." *In re Poplar Run Five Ltd. P'ship*, 192 B.R. 848, 856-57 (Bankr. E.D. Va. 1995). The dispositive issue instead is the centrality of the proceedings to the bankruptcy case. *In re Sys. Eng'g & Energy Mgmt. Assoc., Inc.*, 252 B.R. 635, 642 (Bankr. E.D. Va. 2000). Additionally, in determining whether a proceeding is core or non-

core, courts have considered whether: (1) the claims are specifically identified as core proceedings under 28 U.S.C. § 157(b)(2); (2) the claims existed prior to the filing of the bankruptcy case; (3) the claims are based entirely on state law or otherwise existed independently from title 11; and (4) the parties' rights or obligations are significantly affected by the outcome of the bankruptcy proceedings. *See Caperton v. A.T. Massey Coal Co.*, 270 B.R. 654, 657 (Bankr. S.D. W. Va. 2001); *In re Sys. Eng'g & Energy Mgmt. Assoc., Inc.*, 252 B.R. at 642.

I **FIND** that the plaintiffs' claims against the defendants are core proceedings because each of the defendants is a creditor already involved in the bankruptcy proceeding and the plaintiffs' claims are essentially counterclaims against these creditors. The resolution of Litton's proof of claim in the bankruptcy proceeding will require the resolution of the same questions that are raised in this adversary proceeding because they involve the same transaction. In each instance, the bankruptcy court must determine whether the plaintiffs properly completed their loan payments or whether Litton has a valid claim against the estate for, *inter alia*, late fees, missed payments and inspection fees. Because the plaintiffs are seeking to defeat Litton's claim against the estate and are seeking to obtain affirmative relief from Litton and the other defendants arising from the same transaction upon which Litton's claims against the estate are based, I **FIND** that this adversary proceeding constitutes a counterclaim and is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(C); *In re Wood*, 52 B.R. 513, 521 (Bankr. N.D. Ala. 1985); *see also In re Baudoin*, 981 F.2d 736, 741 (5th Cir.1993); 9 Am. Jur. 2d Bankruptcy § 785; *cf. In re Ellwood City Iron & Wire Co.*, 59 B.R. 53 (Bankr. W.D. Pa. 1986).

Furthermore, I **FIND** that allowing the bankruptcy court to address the plaintiffs' claims will promote the uniform administration of bankruptcy law, judicial economy, and the efficient use of

the parties' resources, and will reduce forum shopping, particularly given this case's long history in the bankruptcy court. Based on these findings, I **FIND** that withdrawal of the reference is inappropriate in this case.

## III. Conclusion

For the reasons stated, I **FIND** that the defendants have not demonstrated good cause to withdraw the reference for this adversary proceeding under 28 U.S.C. § 157(d). Accordingly, the Motion to Withdraw Reference of this Adversary Proceeding [Docket 1] is **DENIED**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        February 13, 2009

Joseph R. Goodwin, Chief Judge

-6-